IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EVERETT RATLIFF,

                                                         OPINION AND ORDER

                Plaintiff,

                                                         18-cv-729-bbc

   v.

ANTHONY HENTZ,
CECILIA HUTCHENSON-SMITH
and KRISTINE PRALLE,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Everett Ratliff, who is incarcerated at the Jackson Correctional Institution, is proceeding on an Eighth Amendment claim that defendants Anthony Hentz, Cecilia Hutchenson-Smith and Kristine Pralle failed to provide him adequate pain medication or medical care for his shoulder injury. Before the court is defendants' motion for summary judgment. Dkt. #17. For the reasons set out below, I am granting the motion and closing this case.

From the parties' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Everett Ratliff is incarcerated at the Jackson Correctional Institution, where defendants Anthony Hentz, Cecilia Hutchenson-Smith and Kristine Pralle were all employed as nurse clinicians.

On December 6, 2017, plaintiff was prescribed Naproxen for pain. (Although the parties do not identify the source of plaintiff's pain, it appears from the medical record that plaintiff had problems with his elbow.) The prescription was good through March 6, 2018. On February 12, 2018, Dr. Liu prescribed plaintiff Tylenol for knee pain, and the prescription was good through May 12, 2018.

On February 15, 2018, plaintiff submitted a health service request asking to be seen by a doctor for left shoulder and arm pain that he rated a 10 on a 10-point scale. Plaintiff also wrote that it felt like his shoulder was slipping out of its socket and "popping." (The parties dispute when and how plaintiff injured his shoulder, but the dispute is not material to plaintiff's claim. Plaintiff says that he injured his left shoulder while lifting weights on February 14. Defendants say that plaintiff told Hentz that he injured his shoulder while lifting weights a few years prior.)

On February 19, 2018, plaintiff saw defendant Hentz and reported that he was having difficulty putting pressure on his left shoulder and sleeping. (The parties dispute what else plaintiff told Hentz during this appointment. Defendants say that plaintiff also told Hentz that he could perform his daily functions. However, plaintiff avers that he told Hentz that he was unable to perform simple tasks like getting in and out of bed and pulling his shirt over his head.) On examination, plaintiff could raise his left arm over his head, had no range of motion limitations and his strength appeared good. Plaintiff told Hentz that he needed pain medication and that even though he had a supply of muscle rub, it did not help. Hentz told plaintiff to limit activities that could increase the pain in his left shoulder and use the pain medication (Naproxen and Tylenol) that he had been prescribed for other

conditions. (Plaintiff says that Hentz told him that he could buy pain medication from the canteen, but plaintiff does not receive any income with which he can make any purchases.) Hentz said he would schedule an appointment with a doctor.

Medical appointments are scheduled according to the urgency of an inmate's needs and the number of inmates on the list who have more urgent medical needs. Jackson Correctional Institution does not have a full-time advanced care provider. For a number of reasons, there are times when inmate appointments must be changed. Appointments may have to be rescheduled for non-emergent medical issues because of medical emergencies, advanced care provider scheduling changes or other appointments that take longer than anticipated.

On March 21, 2018, plaintiff saw Dr. Liu for his left shoulder pain. He stated that about three years ago he was lifting 250-pound weights when he felt his left shoulder slip and felt pain. Plaintiff stated that his pain had been constant for the past year and that he now used 100-pound weights. (Plaintiff says that he also told Liu that he reinjured his shoulder on February 14 and had not lifted weights since that time.) Dr. Liu ordered an x-ray and, if negative, a referral to physical therapy. She advised plaintiff to decrease the amount of weight that he was lifting. X-rays taken on March 28 showed mild degenerative joint disease in plaintiff's left shoulder but no fracture or dislocation. (Plaintiff says he was never informed of the results of the x-ray.)

On April 9, 2018, an order was placed for a physical therapy consultation, and plaintiff was evaluated on April 10. He was given therapeutic exercises and an ultrasound.

Plaintiff had additional physical therapy appointments on April 26, May 21, June 12 and June 26, 2018. During these visits, the therapist discussed with plaintiff the proper method of performing certain exercises and advised him to discontinue lunges, jumping, stretching and exercising on his own. On June 26, 2018, the physical therapist discharged plaintiff from physical therapy because he had met all of his therapeutic goals and advised plaintiff to continue his exercises in his cell.

On May 3, 2018, plaintiff saw a nurse, who gave him Ibuprofen and muscle rub pursuant to the nursing protocol for musculoskeletal complaints, which states that a patient may be given "Acetaminophen or Ibuprofen per package instructions (may alternate use) and Analgesic balm PRN." Nursing protocols are written guidelines for Department of Corrections nurses to use in assessing inmate patients, making clinical judgments about inmate patient health conditions and implementing a plan of care. Medications provided by a nurse are generally over-the-counter for a limited amount of time, and there are no refills.

On May 21, 2018, plaintiff submitted a health service request stating that he had been complaining about his left shoulder for months and that he still had excruciating pain when it popped and clicked. He also stated that he had asked for a health care record review over a month earlier but had not received one. His request was forwarded for a record review on May 22.

In a health service request dated July 6, 2018, plaintiff asked when he would receive treatment for his left shoulder, alleging "it has been months," he was in severe pain and his

shoulder was clicking and popping. He was told by a non-defendant that an appointment with the nurse practitioner was scheduled and he would be seen in the near future.

In a health service request dated July 8, 2018, plaintiff stated that he continued to have shoulder pain and asked when he would see a nurse practitioner. Defendant Pralle responded that plaintiff's x-ray showed no fracture or dislocation, he had received physical therapy, he was on the schedule to see a physician and he could purchase Tylenol or Ibuprofen from the canteen. Plaintiff submitted another health service request on July 12, stating that he was still in pain, needed pain medication and could not afford to purchase medication from the canteen. A non-defendant nurse responded that plaintiff had an appointment scheduled. Plaintiff submitted a similar health service request on July 16, stating that he had not heard anything from the health services unit.

On July 17, 2018, defendant Hutchenson-Smith saw plaintiff, who stated that he had tried physical therapy exercises, muscle rub, Ibuprofen and Tylenol, but nothing worked. Hutchenson-Smith told plaintiff that he was scheduled to see an advanced care provider. Although plaintiff asked for stronger pain medication, Hutchenson-Smith dispensed Ibuprofen, which was the only medicine in addition to acetaminophen that she could supply under the nursing protocol. Plaintiff stated that he would take the Ibuprofen. Hutchenson-Smith also told him to take hot showers as needed to assist with pain relief. (Although both parties have proposed findings of fact about plaintiff's subsequent health service requests and treatment, I have not considered them because they are not relevant to the claims on which plaintiff was allowed to proceed.)

OPINION

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). See also Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care."). At least for purposes of summary judgment, defendants concede that plaintiff's shoulder pain posed a serious medical need. Therefore, the question is whether plaintiff has submitted enough evidence from which a reasonable jury could conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). To be considered "deliberately indifferent," an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

In cases like this one, in which a prisoner alleges that he received some treatment for his medical condition, but that the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014). A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id. But a medical provider may violate the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or that the provider knows will be ineffective. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016).

Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in "a course of treatment known to be ineffective" or proof that the defendant's treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment. Id. A medical professional's choice to pursue an "easier and less efficacious treatment" or "a non-trivial

delay in treating serious pain" may also support a claim of deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citation omitted).

Finally, a medical provider cannot be held liable for deliberate indifference under 42 U.S.C. § 1983 unless the provider was personally involved with the prisoner's medical care or treatment. Gayton v. McCoy, 593 F.3d 610, 612 (7th Cir. 2010) (granting summary judgment for defendants who did not know about plaintiff's condition or requests for medical attention); Aponte v. Suliene, Case No. 14-cv-132-jdp (W.D. Wis. Aug. 30, 2016) (granting defendant's motion for summary judgment because defendant was not personally involved in scheduling or allegedly depriving the plaintiff of an earlier off-site appointment for staple removal).

Plaintiff contends that defendants failed to take reasonable measures to get him pain medication or treatment for his shoulder pain, even though they knew that he was in pain, did not have any pain medication and had not seen a doctor for months. I will discuss defendants' alleged actions separately.

### A. Defendant Hentz

Plaintiff alleges that on February 19, 2018, defendant Hentz did not give him any pain medication and made him wait weeks to see a doctor, even though Hentz knew that plaintiff was in severe pain and did not have money to buy pain medication from the canteen. However, the undisputed evidence shows that after Hentz examined plaintiff and noted that plaintiff had no range or motion or strength deficits in his shoulder, he advised

8

plaintiff to limit his activities and use the Naproxen and Tylenol that he already had been prescribed for pain. Even if plaintiff could not afford to purchase pain relievers from the canteen, he had access to them. In addition, Hentz scheduled an appointment with an advanced care provider. Although plaintiff complains that he had to wait weeks for the appointment, he has failed to present any evidence that Hentz had any responsibility for the delay or could have done anything to speed up the process. It is undisputed that there are no advanced care providers working at Jackson Correctional Institution and that inmates may have to wait for appointments for a variety of reasons outside the control of health services staff, including medical emergencies, the number of inmates requiring treatment and scheduling changes.

Plaintiff apparently believes that defendant Hentz should have given him stronger pain medication. However, it is undisputed that as a nurse, Hentz could provide only over-the-counter medications for a short period of time. It also is undisputed that Hentz's treatment decision was consistent with nursing protocols that state that a patient should be given acetaminophen or Ibuprofen and analgesic balm for musculoskeletal complaints. Therefore, plaintiff has failed to show that a reasonable jury could conclude that Hentz failed to use medical judgment or knew that the conservative measures he took would be ineffective for plaintiff's symptoms. In fact, when Dr. Liu saw plaintiff in March 2018, she did not prescribe anything stronger than Tylenol for plaintiff's pain. Accordingly, defendant Hentz is entitled to summary judgment with respect to plaintiff's claim against him.

## B. Defendant Pralle

Plaintiff's claim against defendant Pralle is based on her response to his July 8, 2018 health service request, in which he complained about continuing shoulder pain and asked to see a nurse practitioner. Pralle told plaintiff that his x-ray showed no fracture or dislocation, he had received physical therapy, he was on the schedule to see a physician and he could purchase Tylenol or Ibuprofen from the canteen. Plaintiff submitted additional health service requests on July 12 and 16, stating that he was still in pain, needed pain medication and could not afford to purchase medication from the canteen.

Plaintiff takes issue with the fact that defendant Pralle did not give him pain medication in response to his July 8, 2018 health service request and told him to buy it from the canteen, even though he could not afford to do so. However, plaintiff has not presented any evidence showing that Pralle knew that plaintiff could not afford medication when she responded to his July 8 health service request. Although plaintiff had told defendant Hentz that he could not afford to buy pain medication in February, there is no evidence that Pralle knew about those statements or had any reason to suspect that plaintiff's financial hardship was ongoing and still an issue five months later. After receiving Pralle's response, plaintiff informed the health services unit on July 12 and 16, 2018, that he could not afford to purchase anything from the canteen. However, Pralle did not respond to those later requests and there is no evidence suggesting that she knew about them. In any event, after plaintiff informed the health services unit that he could not afford pain medication on July 16, defendant Hutchenson-Smith saw plaintiff and dispensed him Ibuprofen on July 17.

Plaintiff argues that Pralle repeated a course of treatment that she knew was ineffective for plaintiff's pain. However, it is undisputed that as a nurse, Pralle had to follow nursing protocols and could supply only over-the-counter medications for a short period of time. Plaintiff has failed to present any evidence that Pralle had the authority to provide him stronger pain medication or had any role in what he perceives to be a delay in his treatment. At the time she responded to plaintiff's health service request, plaintiff already had seen a doctor who prescribed Tylenol, had an x-ray that revealed no significant or urgent problem and had successfully completed physical therapy. He also was on the schedule to see an advanced care provider about his pain. As with defendant Hentz, there is no evidence that Pralle had any control over the physician's schedule or the timing of plaintiff's appointment or that her treatment decision substantially departed from accepted professional judgment, practice or standards. Accordingly, defendant Pralle is entitled to summary judgment on plaintiff's Eighth Amendment claim.

## C. Defendant Hutchenson-Smith

Plaintiff alleges that on July 17, 2018, defendant Hutchenson-Smith refused to give him any pain medication besides Ibuprofen and only told him that he was on the waiting list to see a doctor, even though plaintiff had been waiting in severe pain for months. This claim fails for the same reasons as plaintiff's claims against defendants Hentz and Pralle fail. Even though plaintiff wanted stronger pain medication and had to wait for an advance care provider appointment, plaintiff has not presented any evidence showing that Hutchenson-

Smith had the authority to provide anything stronger than Ibuprofen or was responsible for any delay in plaintiff seeing an advanced care provider.

Further, contrary to plaintiff's contention, he was not waiting in pain for several months without any treatment for his shoulder injury. It is undisputed that he saw Dr. Liu in March 2018, was given x-rays that showed no severe or urgent problem and underwent several physical therapy sessions which he had successfully completed at the end of June. Without more, plaintiff cannot show that Hutchenson-Smith's decision to dispense Ibuprofen, recommend hot showers and have plaintiff wait for his upcoming advanced care provider appointment was a substantial departure from accepted professional judgment, practice or standards. Accordingly, defendant Hutchenson-Smith is entitled to summary judgment on plaintiff's Eighth Amendment claim.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Anthony Hentz, Cecilia Hutchenson-Smith and Kristine Pralle, dkt. #17, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 20th day of February, 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge